# ORIGINAL

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GRAHAM ARCHITECTURAL PRODUCTS CORP.,** | : | Civil Action No. 1:CV-00-1140 |
| | : | Hon. William W. Caldwell |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | **FILED** |
| **STAR INSURANCE COMPANY,** | : | **SCRANTON** |
| | : | |
| **Defendant.** | : | APR 2 4 2001 |
| | : | |

PER _____ 
DEPUTY CLERK

---

## PLAINTIFF GRAHAM ARCHITECTURAL PRODUCTS CORP.'S
## BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND

---

McELROY, DEUTSCH & MULVANEY, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Plaintiff
Graham Architectural Products Corp.

Mark A. Rosen, Esq.
Of Counsel

## PRELIMINARY STATEMENT

Plaintiff, Graham Architectural Products Corp. ("Graham"), submits this Memorandum of Law in opposition to the motion by defendant Star Insurance Company ("Star") for leave to file an amended answer.

## SUMMARY OF ARGUMENT

This is an action by Graham, a window manufacturer and supplier, to recover the sum of $ 111,323.12, representing the balance due for windows fabricated and furnished for a construction project. Defendant moves to amend its answer in order to assert claims regarding alleged recently discovered defects in the windows.

It is Graham's position that those new claims are legally barred. The agreement pursuant to which Graham fabricated and supplied the windows contains an express warranty that requires that any claims for defects must be asserted within one year from the date of Graham's last invoice. The defects that form the basis for the proposed amended answer were asserted for the first time months after the last possible date for the assertion of claims pursuant to this express warranty. Thus, as set forth in more detail below, the proposed supplemental answer and affirmative defenses seek to interject issues into this litigation which are barred by the express warranty in the Contract

In addition, the introduction of these new issues into the litigation will delay the proceedings and require extensive additional discovery, including expert witnesses. The resulting delays and extensive additional discovery will prejudice Graham. Given the futility of the claims raised by the supplemental answer and affirmative defenses set forth in the Motion

and the fact that granting the Motion will prejudice Graham, Graham submits that the Court should deny Star's Motion.

## COUNTER STATEMENT OF FACTS

Graham's claim arises out of a construction project in which the contractor, Bethel Estimating & Construction ("Bethel"), entered into a contract with the Board of Education of the City of Detroit ("Bethel/Detroit Contract"). The Bethel/Detroit Contract provided for Bethel to perform construction work for a project known as the Building Envelope Renovation, Golightly Education Center, 5536 St. Antoine, Detroit, Michigan (the "Project").

Pursuant to the Bethel/Detroit Contract, Bethel had to post a payment bond to insure that all of its subcontractors and suppliers were paid for work or supplies provided for the Project. In fulfillment of its contractual requirement, Bethel furnished a payment bond from defendant Star, a surety.

Bethel then entered into a Sales Contract with Graham for the fabrication and supply of windows for the Project (the "Sales Contract"). A copy of the Sales Contract is attached hereto as Exhibit "A".

The Sales Contract specifically states, **"Graham's standard warranty applies unless specifically noted herein. Warranty terms appear on the back of this Contract."** *Id.* The warranty and disclaimer of warranty provide:

> 5.    WARRANTY. GRAHAM warrants all goods of its manufacture against defects in workmanship and material for twelve (12) months from the date of invoice and will repair or replace defective goods. Materials only will be provided without labor. Warranties received for all goods finished by GRAHAM but manufactured by others will be transferred by GRAHAM to the extent permitted by law. GRAHAM will further, upon request,

warrant its sealed insulated glass in goods using the same; for a period of five (5) years from the date of invoice against material obstruction resulting from film formation or moisture collection between the interior glass surfaces. GRAHAM will further, upon request, warrant the painted finish of the product for a period of five (5) years from the date of invoice against cracking, chipping or peeling.

No liability shall exist under this warranty until GRAHAM has been paid for the goods, however, the failure to pay for the goods shall not delay the starting time of the warranty time period.

> THE WARRANTIES AND LIABILITIES SET FORTH ABOVE ARE IN LIEU OF ALL OTHER WARRANTIES AND LIABILITIES EXPRESS OR IMPLIED IN LAW OR IN FACT, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL THE COMPANY BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.

In the event of a failure of the goods to conform to the warranties set forth above, GRAHAM must be notified in writing within ten (10) days after the nonconformity occurs at 1551 Mt. Rose Avenue, York, Pennsylvania 17403. Failure of proper notice results in forfeiture of all rights under this warranty.

*Id.*

Graham entered into performance of the Sales Contract and provided windows to Bethel. The date of Graham's last invoice for windows was December 10, 1999. A copy of the December 10, 1999, invoice is attached hereto as Exhibit "B". Graham has not received payment of $111,323.12 for windows fabricated and supplied to Bethel pursuant to the Sales Contract.

On or about June 26, 2000, Graham instituted this action to recover the balance owed on the Sales Contract. Star filed its original answer on or about October 30, 2000. On or about

January 31, 2001, Star served answers to Graham's interrogatories in this action. No issues were raised with respect to defects in the windows. In or about March, 2001, Graham received notice from Star that the Detroit Board of Education was alleging that there were certain unspecified defects in the windows. A copy of the letter dated March 9, 2001 is attached hereto as Exhibit "C".

The receipt of this letter was the first notice provided to Graham of any alleged problems with the windows. *See* Affidavit of John Miller, attached hereto as Ex. "D". This notification of alleged problems was provided three (3) months after the last possible day to make a claim under the express warranty.

In response to Star's Statement of Facts, Graham refutes all allegations in Star's Brief that are contrary to those set forth in Graham's Brief in opposition. Graham specifically denies the allegation that there are defects or deficiencies for which Graham is responsible. In addition, Graham denies that the windows failed proper tests or failed to conform with the project specifications that were provided to Graham. Furthermore, Graham denies Star's assertion that the alleged defects constitute a meritorious defense to Graham's claims. Finally, Graham denies that Star will be prejudiced if the Motion is denied and asserts that it is Graham that will be prejudiced if the Motion is granted.

## ARGUMENT

### POINT I

### DEFENDANT'S MOTION TO AMEND
### ITS ANSWER SHOULD BE DENIED

It is well-settled that, "[a]n application for leave to file a supplemental pleading . . . is addressed to the sound discretion of the trial court." *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988); *see also Frempong-Atuahene v. City of Philadelphia*, 1998 U.S. Dist. LEXIS 17642 at * 15 (E.D. Pa. 1998), attached hereto as Exhibit "E".

Factors which the court can consider when deciding whether to grant or deny a motion to file a supplemental pleading include whether the supplemental pleading proposes a futile defense and whether the supplemental pleading will prejudice the rights of a party to the action. *See Nottingham*, 709 F. Supp. at 544; *see also Evans v. Lehman*, 1995 U.S. Dist. LEXIS 2302 at *3 (E.D. Pa. 1995), attached hereto as Exhibit "F".

**a.    Star's Motion Proposes an Answer and**
**Affirmative Defenses Based on Futile Claims**

When considering a motion to supplement a pleading, the court may deny the motion if the proposed claims are futile. *See Frempong-Atuahene*, 1998 U.S. Dist. LEXIS 17642 at *14. Denial of the motion is appropriate "if it appears certain that no relief could be granted under any set of facts which could be proved." *Id.*

Star's motion states, "During the last two weeks, Star has learned that the windows supplied by Graham are deficient or defective and require repair and/or replacement." (emphasis added) Def. Mot. at ¶8.  Defendant's motion further states, "On March 26, 2001, Star received a

copy of the Project Owner's "punch list" identifying the deficiencies and/or defects relevant to the windows." *Id.* at ¶10. Thus, Star's own motion papers clearly establish that the alleged defects were not asserted until March, 2001.

The express warranty in Graham's Sales Contract expressly stated that claims of the nature asserted in Star's motion had to be asserted within one (1) year from the date of Graham's last invoice. *See* Exhibit "A". Grahams' last invoice was dated December 9, 1999. Thus, the last possible date for claims under the express warranty was December 9, 2000. *See id*; *see also* Ex. "B". Therefore, the alleged defects that form the basis of the proposed supplemental answer and affirmative defenses are untimely and are legally barred by the contract.

Under Michigan law, a seller may limit or disclaim warranties if it complies with M.C.L.A. § 440.2316. *See* M.C.L.A. §440.2316; *see also Sylla v. Massey-Ferguson Inc.*, 595 F.Supp. 590, 592 (E.D. Mich. 1984). M.C.L.A. § 440.2316 provides

> (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable.
>
> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
>
> (3) Notwithstanding subsection (2)
>
>> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty . . . .

Written warranties which disclaim or exclude implied warranties are valid in Michigan if they clearly and conspicuously exclude "all other warranties, express or implied, including any warranties of merchantability and fitness." *Id.* "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it . . . . Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." M.C.L.A § 440.1201 (10).

In the present case, the Sales Contract states:

> THE WARRANTIES AND LIABILITIES SET FORTH ABOVE
> ARE IN LIEU OF ALL OTHER WARRANTIES AND
> LIABILITIES EXPRESS OR IMPLIED IN LAW OR IN FACT,
> INCLUDING THE WARRANTIES OF MERCHANTABILITY
> AND FITNESS FOR A PARTICULAR PURPOSE.

*See* Exhibit "A". The express warranty language is in all capital typeface and is set off in a separately indented paragraph from the remainder of the terms and conditions of the Sales Contract. *See id.* The Sales Contract clearly and conspicuously disclaims and excludes all warranties other than those provided in the Sales Contract. *See id.*

The purpose of the limitations set forth in the express warranty is to provide Graham with timely notice of any alleged problems with the windows so that Graham can investigate whether there is a problem and whether the problem is inherent with the window or is related to installation or some other cause. It requires the purchaser to make a timely inspection of the windows after they are delivered.

In the present case, Bethel and the Detroit Board of Education have been in possession of the windows for eighteen (18) months without having made any complaints. Presumably, the windows have been installed in a school building for most of that time subject to the wear and tear attendant to a school building. The limitations set forth in the warranty are designed to

protect Graham against precisely the type of vague, specious, untimely claims of defects that Star seeks to raise with its Amended Answer in order to avoid payment.

**b.**     **Star's Motion Will Prejudice Graham**

In determining whether a party will be prejudiced by supplemental pleadings, the court may consider whether "the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [and] (ii) significantly delay the resolution of the dispute." *See Cohen v. Reed,* 868 F. Supp. 489, 497 (E.D.N.Y. 1994) (citing *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993).

Pursuant to this Court's March 13, 2001, Amended Case Management Order, discovery was to be completed by April 30, 2001.  Given the new issues raised by Star's proposed answer and affirmative defenses, substantial additional discovery will be required, involving expert witnesses, non-party depositions and document discovery.  Graham will have to expend significant additional resources conducting this extensive additional discovery and defending against the issues raised in Star's proposed Amended Answer.

Pursuant to the March 13, 2001, Amended Case Management Order, this matter is currently on the June 2001 trial list.  If Star's Motion is granted, and the resulting additional discovery becomes necessary, counsel for Graham does not see how this case can be prepared for trial in June of this year.  In fact, it will likely be six months, or more, before discovery can be completed, dispositive motions filed and a new trial date scheduled.  Thus, unless the proposed supplemental pleadings are denied, a resolution of this motion will be significantly delayed, resulting in a further prejudice to Graham. *See Nottingham*, 708 F.Supp. at 544 (denying motion to file supplemental pleading because it would result in undue delay).

## CONCLUSION

Based on the foregoing, Graham respectfully submits that the Court should deny Star's

Motion.

Respectfully submitted,

McELROY, DEUTSCH & MULVANEY, LLP
Attorneys for Plaintiff
**GRAHAM ARCHITECTURAL PRODUCTS CORP.**

By: _____
Loren L. Pierce

Dated: April **23**, 2001.

03-29-2001 01:03PM                                                    P.02



*73031*

Page 1 of 1
CONTRACT NO: 2881-00
*Burkhead*

# SALES CONTRACT

**received**
*8/3/98 bt*

1551 MT. ROSE AVENUE, YORK, PA 17403-2909   PHONE: 800-755-6274   FAX: 800-366-5097

| | |
|---|---|
| SUBMITTED TO: | **DATE:** 07/15/98 |
| Bethel Estimating & Construction | **PROJECT:** Golightly |
| 1485 East Outer Drive | **SUBMITTED BY:** Rick Palmer |
| Detroit, MI 48234 | **REVIEWED BY:** Dennis Kelly |
| ATTN:   Mr. Dan McKinney | |

GRAHAM PROPOSES TO FURNISH: (622) Windows:  (337) Series 2075G SH; (252) Series 1250G Fixed Lites; (7) Series 6500G Projected;
(22) Series 6500G Fixed Lites; (4) Series 6500G Proj. w/ Fixed

IN SIZES AND QUANTITIES PER YOUR: Request for Quotation Rec'd. 5/12/98

**FINISH:** Kynar 70% - Standard Color    **GLAZING:** ¼" Clear MR 10 Lexan (or equal) - ¼" Clear Ann. Glass

| INCLUDE | EXCLUDE | | | INCLUDE | EXCLUDE | | |
|---|---|---|---|---|---|---|---|
| (x) | ( ) | Exterior Panning | (Size Marketway) | (x) | ( ) | Panels | (1" Alum.) |
| ( ) | (x) | Subsill/Sill Starter | (Size _____) | ( ) | (x) | Louvers | (_____) |
| ( ) | (x) | Receptor (H J) | (Size _____) | (x) | ( ) | Screens | (Metal Ind. As noted) |
| (x) | ( ) | Interior Trim | (Size #21) | ( ) | (x) | AAMA Labels | (_____) |
| ( ) | (x) | Stool Covers | (_____) | ( ) | (x) | Taxes | (_____) |
| (x) | ( ) | Hardware | (Standard) | (x) | ( ) | Freight | (_____) |
| (x) | ( ) | Mullion Covers | (3" & 4") | (x) | ( ) | Muntins | (In-glass, applied) |

Additional Inclusions                                      Additional Exclusions

1.                                                          1.
2.                                                          2.
3.                                                          3.
4.                                                          4.
5.                                                          5.

**TOTAL PRICE OF:** $284,488    (Two Hundred Eighty-Four Thousand, Four Hundred Eighty-Eight)

Graham's standard warranty applies unless specifically noted herein.  Warranty terms appear on the back of this contract.

## Alternates (All alternates must be noted to be accepted or declined)

| ACCEPT | DECLINE | | |
|---|---|---|---|
| ( ) | (✓) | 1. | Kynar 50% Graham Standard Color in lieu of 70% - $7,577 Deduct from Base |
| ( ) | ( ) | 2. | |
| ( ) | ( ) | 3. | |
| ( ) | ( ) | 4. | |
| ( ) | ( ) | 5. | |
| ( ) | ( ) | 6. | |

By signing this agreement, the Buyer agrees to the Terms and Conditions on the back of this contract.

**BUYER:  SIGNATURE:** _____   **TITLE:** *Pres*   **DATE:** 7-31-98

**GRAHAM  SIGNATURE:** _____   **TITLE:** *Sr Vice President*  **DATE:** 8/15/98

Delivery will be in approximately _____ weeks further subject to the delivery schedule in effect at the time of definition and fabrication release to Graham and subject to paragraph 6 on the back of this Agreement.  This Contract is void if not approved by Buyer and received by Graham within thirty (30) days of date noted above.  All terms and conditions are shown on the back of this contract.

03-29-2001 01:04PM                                                                P.03

## CONTRACT TERMS AND CONDITIONS

1.  **TERMS.** Payment terms for goods shipped or stored hereunder shall require payment in full within 30 days after the date of the invoice. Applicable storage charges shall be imposed beginning 30 days after goods are completed. There shall be a 1% discount on all payments within 10 days of invoice date and a 1½% interest charge per month on all invoices over 45 days of invoice date. No retainage may be withheld unless specifically agreed to prior to the execution of this contract by the President of GRAHAM.

2.  **PERFORMANCE.** Delivery or storage of goods by GRAHAM shall constitute a waiver of all claims for delay and damages for defects. In addition, GRAHAM shall not be liable for failure to ship or delivery delays where such failure or delay is due to the disapproval of credit by GRAHAM or due to strikes, fires, accidents, national emergency, failure to or delay in securing materials in the usual sources of supply, or any other circumstances beyond the control of GRAHAM. In the event of the disapproval of credit by GRAHAM or the occurrence of any of the above events, GRAHAM may cancel this agreement without liability or recourse. Any shortages or receipt of defective parts must be communicated to GRAHAM in writing within forty-eight (48) hours of receipt of said materials. Any controversy or claim arising out of or related to this contract or the breach thereof shall be settled at the option of GRAHAM by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The site of the arbitration shall be in York, PA. GRAHAM may include all interest and attorney's fees in its claim.

3.  **TAXES.** Prices quoted are exclusive of taxes except as specifically included on the front page. The amount of any present or any future occupation, sales, use service, excise or other similar tax which GRAHAM shall be liable for, either on its own behalf or on behalf of the BUYER, with respect to any orders for goods, shall be in addition to the total price and be paid for the BUYER.

4.  **INDEMNIFICATION.** The BUYER agrees to forever save, hold harmless, and indemnify GRAHAM for any damage, claim or expense including legal fees that arise from anything other than a breach of our Warranty or this contract.

5.  **WARRANTY.** GRAHAM warrants all goods of its manufacture against defects in workmanship and material for twelve (12) months from the date of invoice and will repair or replace defective goods. Materials only will be provided without labor. Warranties received for all goods finished by GRAHAM but manufactured by others will be transferred by GRAHAM to the extent permitted by law. GRAHAM will further, upon request, warrant its  sealed insulated glass in goods using the same, for a period of five (5) years from the date of invoice against material obstruction resulting from film formation or moisture collection between the interior glass surfaces. GRAHAM will further, upon request, warrant the painted finish of the product for a period of five (5) years from the date of invoice against cracking, chipping or peeling.

No liability shall exist under this warranty until GRAHAM has been paid for the goods, however, the failure to pay for the goods shall not delay the starting time of the warranty time period.

> THE WARRANTIES AND LIABILITIES SET FORTH ABOVE ARE IN LIEU OF ALL OTHER WARRANTIES AND LIABILITIES EXPRESS OR IMPLIED IN LAW OR IN FACT, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL THE COMPANY BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.

In the event of a failure of the goods to conform to the warranties set forth above, GRAHAM must be notified in writing within ten (10) days after the nonconformity occurs at 1551 Mt. Rose Avenue, York, Pennsylvania 17403. Failure of proper notice results in forfeiture of all rights under this warranty.

6.  **DELIVERY.** Delivery dates are approximate only and represent the first shipment in a multiple shipment order and are calculated from the date GRAHAM receives and approves all final definition. Lead times may vary from the time of the execution of the contract to the receipt of definition. Any changes will delay the project and a new estimated delivery date will be quoted. No specific shipping date will be binding unless the delivery date has been agreed to in writing by an officer of GRAHAM. GRAHAM is not bound to any project completion schedule and will ship as material is available unless specifically instructed not to do so. Damages for late delivery shall in no event include incidental and consequential damages.

Shipments are F.O.B. Factory, with title passing to BUYER upon delivery to the carrier selected by GRAHAM.

Final definition must be received and approved by GRAHAM within ninety (90) calendar days of the execution of this contract.

7.  **ORDERS.** An order based on this contract is not binding until final acceptance by GRAHAM and acceptance of credit terms. Any order executed by GRAHAM and canceled by the BUYER will be subject to a cancellation charge equal to the cost incurred at that time.

8.  **INCORPORATION BY REFERENCE.** Any provision of this Agreement which purports to incorporate by reference any other agreement or any other plans and specifications will be null and void unless the other agreements, plans or specifications are attached hereto at the time of final acceptance by GRAHAM. These terms and conditions supersede any inconsistent contractual terms of any other documents.

RECYCLED



Graham
Architectural Products

**GRAHAM ARCHITECTURAL PRODUCTS CORPORATION**
1551 MT. ROSE AVE.
YORK, PENNSYLVANIA 17403
717/849-8100 • Fax: 717/843-6344

**REMIT TO:**

Graham Architectural Products
P.O. Box 64017
Baltimore, Maryland 21264-4017

INVOICE NO.

**991323**

# INVOICE

| | | |
|---|---|---|
| SOLD TO: | **BETHEL ESTIMATING & CONSTRUCTN**<br>**1485 EAST OUTER DRIVE**<br>**DETROIT  MI     48234** | SHIP TO: **GOLIGHTLY EDUCATION CENTER**<br>**5536 ST. ANTONINE STREET**<br>**DETROIT  MI** |

| ACCOUNT NO. | SALESPERSON | PURCHASE ORDER NO. | SHIP VIA | TERMS | INVOICE DATE |
|---|---|---|---|---|---|
| 3E115 | BURKHEA | | **Truck/Com Car** | 1%-10/NET 30 | 12/10/99 |

| ITEM NO. | QTY. SHIPPED | DESCRIPTION | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|
| 1 | 26 | **WINDOW UNITS LOAD 4** | 843.36 | $21,927.36 |
| 2 | 1 | **34 WINDOW UNITS PHASE 2 LOAD 1** | 24,715.08 | $24,715.08 |

*Graham Architectural Products*

*Thank You*

**COMMENTS: 43031 GOLIGHTLY**
**MI/BUR**

| | |
|---|---|
| SALE AMOUNT | $46,642.44 |
| MISC. CHARGES | $.00 |
| SALES TAX | $.00 |
| FREIGHT | $.00 |
| **TOTAL** | **$46,642.44** |

# BLUMLING & GUSKY, LLP

### ATTORNEYS AT LAW

**1200 Koppers Building**
**436 7ᵗʰ Avenue**
**Pittsburgh, PA   15219-1818**

MICHAEL D. KLEIN

**412-227-2500 Phone**
**412-227-2050 Fax**

March 9, 2001

**Via Facsimile @ (973) 425-0161**
**and Via Regular United States Mail**

Mark A. Rosen, Esquire
McElroy, Deutsch & Mulvaney
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ  07962

> Re:   **Graham Architectural Products Corp. v. Star Insurance Company,**
> **U.S. District Court for the Middle District of Pennsylvania; Civil**
> **Action No. 1:CV-00-1140**

Dear Mr. Rosen:

It appeared from the settlement discussions initiated by Mr. Blumling of this office that this case was close to settling and could have been settled. However for some unexplained reason you stopped responding to our correspondence and telephone calls. Because of your failure to communicate or otherwise respond, it now appears that there is no chance of settlement.

Furthermore, over the past four weeks, my associate, Anthony Como, has sent several letters to you and made numerous phone calls requesting a proposal from Graham for the cost of furnishing the remaining windows on the Project. Due to your lack of response to Mr. Como's requests, we can only assume it is Graham's position that it is unwilling to provide the remaining windows to complete the Project and has no interest in settlement negotiations in relation to this matter. As a result of your failure to respond Mr. Como's requests, we are left with no choice but to turn to alternative window manufacturers to supply the windows. As such, Graham will be held responsible for all additional costs associated with providing the remaining windows to complete the Project.

Also, please be advised that the Board of Education of the City of Detroit has informed Star Insurance Company that there are a substantial number of windows that are defective and must be repaired or replaced. It is our understanding that the defective windows present life safety issues that require immediate corrective action by Graham. The Board of Education will be scheduling a site inspection during the week of March 12, 2001, for purposes of identifying those windows that are defective and require repair. Because Graham is ultimately responsible for the defective windows, we suggest that Graham send a representative to attend the site

{20146.01/246750:}

Mark A. Rosen, Esquire
March 9, 2001
Page 2

inspection. Representatives of the Owner, Project Manager, Architect, Bethel and Star will be attending the site inspection. To the extent that Graham refuses to make the corrective repairs identified during the site inspection, we will be forced to arrange for the corrective work to be performed by another window manufacturer. All costs incurred in connection with the repair and/or replacement of defective windows will be charged to Graham.

This matter requires your immediate attention. Please call me so that we can discuss whether Graham will be supplying the remaining windows for the Project. We also need to discuss whether you or a representative of Graham will be attending the upcoming site inspection.

Very truly yours,

**BLUMLING & GUSKY, LLP**

Michael D. Klein

*MDK/dmh*

cc:    *Bethel Estimating & Construction Co. Inc. – Samuel E. Wright, Jr., President*
       *The Board of Education of the City of Detroit – Darnell Boynton, Esquire*
       *John D. McManus, Esquire*
       *Robert J. Blumling, Esquire*
       *Anthony E. Como, Esquire*

{20146.01/246750:}

RECYCLED

Apr-20-01  11:37am  From-McNully Deutsch Mulvaney        97342502        T-010  P.002/003  F-489

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GRAHAM ARCHITECTURAL PRODUCTS CORP., | Civil Action No. 1:CV-00-1140 |
| Plaintiff, | AFFIDAVIT SUBMITTED IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL ANSWER AND AFFIRMATIVE DEFENSES |
| v. | |
| STAR INSURANCE COMPANY, | |
| Defendant. | |

STATE OF PENNSYLVANIA )
                       ) ss:
COUNTY OF _York_       )

**JOHN MILLER**, being duly sworn, deposes and says:

1.    I am the Credit Manager for Graham Architectural Products Corp. ("Graham"), the plaintiff in this action. I am fully familiar with the facts set forth herein.

2.    I make this Affidavit in connection with Graham's opposition to Star Insurance Company's ("Star") Motion for leave to file Supplemental Answer and Affirmative Defenses.

3.    The copy of the Sales Contract attached as Exhibit "A" to Graham's brief in opposition is a true and accurate copy of the Sales Contract between Graham and Bethel Estimating & Construction ("Bethel").

4.      The copy of the December 10, 1999, invoice attached as Exhibit "B" to Graham's brief in opposition is a true and accurate copy of the invoice reflecting the last date on which windows were supplied to Bethel pursuant to the Sales Contract.

5.      Prior to receipt of the letter attached as Exhibit "C" to Graham's brief in opposition, Graham was unaware of and had not been notified of any alleged claims of defects or deficiencies with the windows fabricated and supplied to Bethel pursuant to the Sales Contract.

WHEREFORE, plaintiff respectfully requests an Order denying defendant's motion, together with such other and further relief as the court deems proper.

John C Miller
John Miller

Sworn and subscribed to
before me this 20 th day
of April, 2001.

Sandra J. Hughes
A Notary Public of the State of Pennsylvania

May 7, 2002
Commission Expires:

| Notarial Seal |
| Sandra J. Hughes, Notary Public |
| Spring Garden Twp., York County |
| My Commission Expires May 7, 2002 |

Member, Pennsylvania Association of Notaries