

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRAHAM ARCHITECTURAL PRODUCTS CORP., | ) ) ) | Civil Action |
| Plaintiff, | ) ) | Civil Action No. 1:CV-00-1140 (Hon. William W. Caldwell) |
| v. | ) ) | |
| STAR INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

FILED
HARRISBURG

MAY 0 3 2001

MARY E. D'ANDREA, CLERK
Per_____
      DEPUTY CLERK

### DEFENDANT'S REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant, Star Insurance Company ("Star"), by and through its undersigned counsel, files the following Reply Brief in Response to Plaintiff's Brief in Opposition to Star's Motion for Leave to File Supplemental Answer and Affirmative Defenses in Response to Plaintiff's Complaint, and in support thereof, states as follows:

**I.   ARGUMENT**

**A.   THE ADDITIONAL AVERMENTS AND AFFIRMATIVE DEFENSES ASSERTED IN STAR'S SUPPLEMENTAL ANSWER ARE MERITORIOUS AND ARE NOT BASED ON FUTILE CLAIMS**

Plaintiff argues that Star's Motion should be denied because Star's Motion proposes answers and affirmative defenses are futile based upon the expiration of the warranty provision as set forth in the Graham/Bethel Sales Contract. Star's argument is simply incorrect and does not accurately represent the terms of the warranty supplied by Graham in connection with the subject windows at issue in this case. The additional defenses raised in Star's Supplemental Answer and Affirmative Defenses regarding alleged deficiencies and/or defects in the windows fall within the time period of the warranty supplied by Graham. Notwithstanding Graham's

representation to the Court that Graham agreed to supply a one (1) year warranty on the windows, Graham actually agreed to supply a fifteen (15) year warranty in accordance with the requirements of the Project Specifications.

Graham bears a heavy burden in its attempt to have this Court deny Star's Motion for Leave based upon its claim that the defenses raised in Star's Supplemental Answer are futile. In examining Graham's argument that Star's defenses in its Supplemental Answer are futile, Graham must prove that the defenses set forth by Star in its Supplemental Answer could provide any defense to Plaintiff's claims under any viable legal theory. See 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 n.40 (2d ed. 1990). Based on the pleadings of record, the arguments of counsel and the briefs filed in support and opposition thereto, Graham must persuade the Court beyond any doubt that Star can prove no set of facts in support of the defenses raised in its Supplemental Answer and Affirmative Defenses to Plaintiff's Complaint. See Conley vs. Gibson, 355 U.S. 41, 45-46 (1957).

Although Graham refers the Court to the Sales Contract for the terms of the warranty supplied by Graham on the subject windows, Graham conveniently fails to mention its August 15, 1998 correspondence directed to the Detroit Public Schools, wherein Graham agreed to modify the one (1) year warranty in the Sales Contract to supply a fifteen (15) year warranty as stated in the specifications. A copy of Graham's August 31, 1998 letter to Dr. Michael P. Ugorcak, Jr. of the Detroit Public Schools is attached hereto as Exhibit "A", and in pertinent part provides as follows:

> We are currently working on the Golightly Education Center project with our customer, Bethel Estimating and Construction. Several issues have been raised regarding the specifications and the Graham products. Most of these issues were clarified during your recent visit to Graham. For the benefit of Detroit Public Schools, Graham Architectural Products and our customer, Bethel Estimating and Construction, I would like to review the issues and the resolutions

<u>reached during your visit so that we may be in agreement that the Graham products are in compliance with the Detroit Public Schools requirements regarding these issues.</u>

- <u>Graham can supply a 15 year warranty as stated in the specifications.</u>

<u>See</u> Graham's August 31, 1998 letter, to Dr. Michael P. Ugorcak, Jr. of the Detroit Public Schools attached hereto as Exhibit "A" (emphasis added).

Based upon Graham's own correspondence to the project owner confirming the resolutions reached among Graham, Bethel and the owner relative to the windows to be supplied by Graham on the Project, it is patently clear that the warranty set forth in the Graham sales contract was modified to a fifteen (15) year warranty to comply with the project specifications. A copy of the relevant portion of the Project Specifications providing the requirements for the window warranty is attached hereto as Exhibit "B", and in pertinent part provides as follows:

1.7 Guarantee

    A.    Installer shall provide a three-year contractor's guarantee and warrant the satisfactory performance of the total window installation with respect to its workmanship and performance in the installation of the window unit.

    B.    <u>Window Manufacturer</u> shall provide the following guarantees:

        1.    <u>Aluminum windows</u> and related materials.

            (a)    <u>Fifteen year guarantee</u> on materials and workmanship.

            (b)    Ten year <u>guarantee</u> on poured in place thermal barrier against dry shrinkage and adhesion loss.

<u>See</u> Article 1.7, Section 08500, Project Specifications, Golightly Education Center attached hereto as Exhibit "B".

Graham's bald statement that the warranty is one year and not fifteen (15) years, as set forth in its August 31, 1998 letter, is insufficient to prove its allegation of futility. Given the fact that Graham's August 31, 1998 letter was sent to the project owner and Bethel <u>after</u> the execution

3

of the Sales Contract[1], it is clear that it was Graham's intent, following discussions with the project owner and Bethel, that the one (1) year warranty set forth in the Sales Contract be modified to a fifteen (15) year warranty as stated in the Specifications. At the very least, there exists a genuine issue of material fact with respect to the warranty period that requires Star's Motion for Leave to be granted.

The averments in Star's Supplemental Answer and Affirmative Defenses regarding deficiencies in the windows supplied by Graham are well within the fifteen (15) year warranty that Graham agreed to provide in connection with the windows supplied on the Project. Based upon the foregoing, Star's defenses regarding deficiencies and/or defects in the windows supplied by Graham are meritorious. There is absolutely no basis to justify dismissal of Star's Motion for Leave to File a Supplemental Answer and Affirmative Defenses on the grounds of futility.

**B.  GRAHAM WILL NOT BE PREJUDICED BY THE ADDITIONAL DEFENSES ASSERTED IN STAR'S SUPPLEMENTAL ANSWER AND AFFIRMATIVE DEFENSES**

   **i.  Granting Star's Motion to Supplement its Answer and Affirmative Defenses will not require any duplicative or unnecessary discovery.**

Plaintiff argues that Star's Motion to Supplement its Answer should be denied because the Plaintiff would be prejudiced by the assertion of the new defenses. Graham argues that given the issues raised in Star's Supplemental Answer, substantial additional discovery will be required, involving expert witnesses, non-party depositions and document discovery. Obviously, litigation of any defense requires discovery. The fact that a party is afforded an opportunity to

---

[1] The sales contract between Graham and Bethel was executed by the parties on July 31, 1998 and August 15, 1998 respectively.

4

plead all of its defenses is not tantamount to requiring "additional discovery" as argued by Graham.

The fact that Graham must retain an expert and conduct discovery does not create undue prejudice to Graham. Rather, because Graham has only served interrogatories to Star, Graham will not be conducting "additional" discovery as claimed in its Response. Because Plaintiff has neither conducted any document reviews nor taken any depositions in connection with this matter, Plaintiff would not be incurring any duplicative or unnecessary costs as a result of the additional defenses plead in Star's Supplemental Answer. Graham is in essentially the same position today as it was when Star filed its original Answer and Affirmative Defenses to Plaintiff's Complaint. By taking discovery and retaining an expert regarding the alleged defects and deficiencies in the windows as averred in Star's Supplemental Answer, Graham will not be expending any duplicative or unnecessary resources to conduct discovery and prepare for trial.

    ii.    **Granting Star's Motion to Supplement its Answer and Affirmative Defenses will not delay the resolution of the dispute.**

Pursuant to this Court's Second Amended Case Management Order, the Court put this case on the December, 2001, Trial List and the Court further ordered that discovery be completed sixty (60) days from the date on which this Court issues its Order concerning the within Motion. Given the present trial schedule, Star does not believe that the additional defenses raised in its Supplemental Answer will delay this case in any way. While Star is without knowledge as to how long it will take Plaintiff to conduct discovery relevant to the deficiencies and/or defects in the windows as averred in Star's Supplemental Answer, Star believes that document discovery and/or depositions can be conducted within the time frame already established by the Court.

## CONCLUSION

Based upon the foregoing, Plaintiff is unable to make the requisite showing necessary to overcome Rule 15's liberal policy favoring a merit-based resolution of the entire controversy between the parties. First, Graham has failed to establish that Star has moved in bad faith in filing its Motion for Leave to File Supplemental Answer and Affirmative Defenses to Plaintiff's Complaint. Second, Graham has not demonstrated that it would suffer undue prejudice if Star's Motion for Leave were granted. Finally, Graham has utterly failed to establish that Star's defenses regarding alleged deficiencies and/or defects in the windows as set forth in its Supplemental Answer are futile. Star Insurance Company respectfully requests that Honorable Court grant Star's Motion for Leave to File Supplemental Answer and Affirmative Defenses in the form attached to Star's Motion as Exhibit "C".

Respectfully submitted,

BLUMLING & GUSKY, LLP

By: *[signature]*
Robert J. Blumling, Esquire
PA I.D. #37943
Michael D. Klein, Esquire
PA I.D. #76212
Anthony E. Como, Esquire
PA I.D. #85992

1200 Koppers Building
Pittsburgh, PA 15219
(412) 227-2500
Firm No. 458
Counsel for Defendant, Star Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT'S REPLY BRIEF TO RESPONDENT'S BRIEF IN OPPOSITION TO MOTION TO FILE SUPPLEMENTAL ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT was served this 3rd day of May, 2001, upon the following, by depositing the same in the United States Mail, First Class, Postage Pre-Paid, upon the following:

Mark A. Rosen, Esquire
Loren L. Pierce, Esquire
MCELROY, DEUTSCH & MULVANEY
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075

*[signature]*



**Graham Architectural Products**

August 31, 1998

Dr. Michael P. Ugorcak, Jr., A.I.A.
Detroit Public Schools
50-57 Woodward Ave., Room 556
Detroit MI 48202

RE:   Golightly Education Center
      Project No. 9709

Dear Dr. Ugorcak:

We are currently working on the Golightly Education Center project with our customer, Bethel Estimating and Construction. Several issues have been raised regarding the specifications and the Graham products. Most of these issues were clarified during your recent visit to Graham. For the benefit of Detroit Public Schools, Graham Architectural Products and our customer, Bethel Estimating and Construction, I would like to review the issues and the resolutions reached during your visit so that we may be in agreement that the Graham products are in compliance with the Detroit Public Schools requirements regarding these issues.

- The project specifications describe the performance requirement for the single hung windows as P-AW65. This is a mistake in the specifications. This is a rating for a projected window. The performance rating of H-AW55 shall be acceptable, therefor the Graham Model 2075 does meet the performance rating requirement of the project.

- The project specifications require that the poured thermal barrier cavities must receive AZO-BRADING. This process is not required in the Graham products, however in order to comply with the Detroit Public Schools specifications, Graham shall provide AZO-BRADING in the poured thermal cavities.

- Graham can supply a 15 year warranty as stated in the specifications.

- Graham can supply white bronze pole hardware, including a pole ring where required, on the project-in vents, as stated in the specifications.

- Graham shall supply two automatic latches at the sill of the single hung windows along with two sweep locks at the meeting rail, as stated in the specifications.

- Keyed limit devices can be provided for the hung windows where indicated, for restrooms or other areas requiring limited travel.




- The model 2075 is available with Ultralift balances.

- The corner assembly of the projected vents are mitered and mechanically crimped over two individual corner keys (blocks) with four crimps. Each key is set and sealed in epoxy, as stated in the specifications.

- The tuck access doors/muntins in the Graham products are acceptable, provided the muntins are secured to a perimeter frame and set between the lights of glass (or polycarbonate).

- The Graham products are designed for 1/2" edge engagement of the polycarbonate. If this is not acceptable, Graham is agreeable to discussing this issue further.

- The access panel is marine glazed using a one piece wrap around glazing gasket.

- Exterior paming shall have a minimum wall thickness of 0.093". Interior trim shall be 0.062"

- Graham can provide a 70% kynar finishes or a 50% kynar finish, if acceptable with the Detroit Public Schools.

Please review each of the above items. If there are any items which you are not in agreement with, or require further clarification, please let us know and we would be happy to discuss further or meet with you to resolve or clarify each issue. We are currently developing shop drawings, therefor, a timely response would be appreciated so that we may avoid having to resubmit the drawings due to changes which could result from these issues.

Sincerely,

William F. Wilder
Manager, Technical Services

cc:   Sabrina Burkhead
      Bill Martin
      Dan McKinney, Bethel Estimating and Construction

SPECIFICATIONS FOR

COPY

# GOLIGHTLY EDUCATION CENTER
# BUILDING ENVELOPE RENOVATION

5536 St. ANTOINE
Detroit, Michigan 48202

Capital Improvement Project No. 24
MEA Project No. 9709
DPS BOND SERIES 1

APR 11 2001

for

**FACILITIES DESIGN AND CONSTRUCTION OFFICE
BOARD OF EDUCATION OF THE CITY OF DETROIT**
Schools Center Building, Room 556
5057 Woodward Avenue
Detroit, Michigan 48202

Interim General Superintendent .................................................. EDDIE GREEN, Ed. D.
President .............................................................................................. IRMA CLARK

PROGRAM MANAGER:

AMAC SALES & BUILDERS, INC.
1528 Woodward Avenue
Detroit, MI 48226
(313) 965-1500
(313) 965-1508 (fax)

ARCHITECT:

MARK ENGLISH ASSOCIATES, INC.
ARCHITECTS - DESIGNERS - PLANNERS
20122 Livernois Avenue
Detroit, Michigan 48221
(313) 862-8272
(313) 862-1190 (fax)

DATE OF ISSUE: April 20, 1998


EXHIBIT "B"

BID DUE DATE: May 14, 1998

GOLIGHTLY EDUCATION CENTER
PROJECT NO. 9709
CAPITAL IMPROVEMENT PROJECT NO. 24

SECTION 08500
ALUMINUM WINDOWS

## 1.6 PRODUCT HANDLING

A. Window manufacturer will have representative at the site, in an area designated by the installer, or at a designated off-site storage facility, to receive, label, and provide storage for all delivered materials relating to the window unit. Installer shall be responsible for monitoring all construction deliveries to the site and shall assist in coordination of the installation process and expedite the schedule.

B. Window manufacturer will provide necessary on-site instruction to the installer to ensure proper compliance with manufacturer's specifications and recommendations for proper installation of window units.

## 1.7 GUARANTEE

A. Installer shall provide a three-year contractor's guarantee and warrant the satisfactory performance of the total window installation with respect to its workmanship and performance in the installation of the window unit.

B. Window Manufacturer shall provide the following guarantees:

1. Aluminum windows and related materials.

   (a) Fifteen year guarantee on materials and workmanship.

   (b) Ten year guarantee on poured in place thermal barrier against dry shrinkage and adhesion loss.

2. Glass

   (a) Fifteen year guarantee of thermal and physical integrity of insulated glass units.

3. Factory Glazing

   (a) Fifteen year guarantee of thermal and physical integrity of insulated glass units and glazing.

C. Any deficiencies due to any such elements not meeting the respective specification shall be corrected by the responsible party at no additional expense to the Owner during the warranty period.

08500-5